UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMAURYS ROSA, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-10496-JGD |
| JEFFREY GRONDOLSKY, | ) | |
| Warden, FPC Devens, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON PETITIONER'S
MOTION FOR A PRELIMINARY INJUNCTION, RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, AND THE PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

July 9, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

The petitioner, Amaurys Rosa ("Rosa" or "Petitioner"), is incarcerated at the

Federal Medical Center in Devens, Massachusetts ("FMC Devens"), where he is serving

a 60-month term of imprisonment for conspiracy to possess with intent to distribute

heroin.  He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241

(Docket No. 1) challenging both the procedural aspects of a prison disciplinary action, as

well as the sanctions imposed.  Specifically, as the first grounds of his habeas petition,

Rosa contends that the Bureau of Prisons ("BOP") violated federal regulations, and his

procedural due process rights, when he received an incident report more than 24 hours

after the staff learned of the incident giving rise to the disciplinary charge.  He further

contends that the Discipline Hearing Officer ("DHO") imposed an unlawful and arbitrary and capricious penalty when he sanctioned Rosa to forfeit 90 days of non-vested good conduct time, among other penalties.

BOP has established Rosa's projected release date as October 19, 2013.  Rosa has filed a motion for a preliminary injunction pursuant to which he is seeking a return of the 90 days of non-vested good conduct time, which would move his projected release date to July 22, 2013.  (Docket No. 7).  In response to the motion for a preliminary injunction, on May 24, 2013, the Respondent filed a motion for summary judgment.  (Docket No. 19). The motion for summary judgment is supported by the Respondent's memorandum (Docket No. 20) and the declaration of Anthony Amico, Discipline Hearing Officer ("DHO Decl.") (Docket No. 20-1).  In addition to the pleadings and documents filed by Rosa in connection with his motion for a preliminary injunction (Docket Nos. 7, 18), Rosa has filed a Response to the motion for summary judgment (Docket No. 22) and an Ex Parte Declaration ("Rosa Decl.") (Docket No. 25), which the court has accepted for filing.

As a second ground for his habeas petition, Rosa contends that the BOP has recalculated his halfway house date as a result of the disciplinary charges, and that he has been wrongfully deprived of serving 10% of his sentence in a residential re-entry center ("RRC").  In his petition, he contends that exhaustion of this claim would be futile as the appeals process would not be completed before his sentence expired.  (Docket No. 1 at 4).  However, it appears that Rosa has at least commenced the administrative appeal

process since his habeas petition was filed.  (See Docket No. 18).  His initial appeal has been denied.  (Id.).

The Respondent has not addressed this second ground in his motion for summary judgment.  Nevertheless, this court concludes that it is ripe for review as it has been fully addressed by Rosa and the record is complete.  Since the Respondent has not argued that the matter is not exhausted, this court will address Rosa's contention on the merits.

After careful consideration of the record and arguments, and for all the reasons detailed herein, Petitioner's motion for a preliminary injunction is denied and the Respondent's motion for summary judgment is allowed, as the penalties imposed for Rosa's disciplinary violation were permissible and did not violate his constitutional rights.  In addition, Rosa's challenge to the calculation of his placement in the halfway house is without merit.  Therefore, the habeas petition will be dismissed.[1]

## II.  **STATEMENT OF FACTS**[2]

### **Events Leading to the Disciplinary Charge**

Rosa is a federal inmate serving a 60-month term of imprisonment for conspiracy to posses with the intent to distribute heroin, to be followed by a 5-year term of supervised release.  (DHO Decl. ¶ 4).  On August 13, 2012, at approximately 12:30 p.m., while

---

[1] Rosa has also filed a Motion for Appointment of Counsel.  (Docket No. 14).  In light of the extensive record filed by the parties, the fact that Rosa has adequately addressed the issues in dispute, the fact that the issues raised are not novel, and the fact that time is of the essence in addressing Rosa's issues, the motion for appointment of counsel is denied.

[2] The facts are undisputed unless otherwise indicated.

conducting a random area search of Federal Prison Camp, Devens, Massachusetts ("FPC

Devens"), an officer discovered 12 cellular telephones bundled and wrapped together in

the ceiling rafters at the rear entrance of the Federal Prison Camp.  (Id. ¶ 5).  Consequent-

ly, FMC Devens' Special Investigative Services Office ("SIS") opened an investigation,

and the cell phones were sent off-site for analysis to the Federal Bureau of Prisons' Cell

Phone Forensics Lab in the Intelligence and Counterterrorism branch of the Correctional

Programs Division.  (Id. at ¶ 6).  Pursuant to this investigation, forensic analysis

recovered data from the cell phones revealing that Rosa and others had likely used these

phones.  (Id.).

Shortly thereafter, on September 7, 2012, Rosa was interviewed by SIS to further

determine the extent of his connection to the cell phones at issue.  (Id. at ¶ 7).  One of the

phone numbers found on one of the cell phones matched a number on Rosa's approved

inmate telephone list, and only his list.  (Id. ¶¶ 7-8).  In addition, there were photographs

of Rosa on the phone date stamped June 3, 2012.  (Id. ¶ 8).  Nevertheless, according to

SIS, Rosa was unable to provide a rational explanation as to the connection between the

data on the phone and his contact information, and he was not willing to provide the

investigator with any information pertaining to the introduction and use of contraband

items found at FPC Devens.  (Id. ¶ 7).

The Respondent contends that the SIS investigation concluded on October 2, 2012.

(Id. ¶ 8).  Rosa disputes this, arguing that at the time of his interview on September 7,

2012, the "so-called evidence was already in staff's possession[.]"  (Pet. Resp. (Docket

No. 22) ¶ 4).  However, Rosa has not provided any facts challenging the Respondent's contention that the investigation continued, presumably without Rosa's involvement and on other fronts, until October 2, 2012.

On October 2, 2012, Rosa was issued an incident report charging him with Possession, Manufacture, or Introduction of a Cell Phone, in violation of BOP Discipline Code 108.  (DHO Decl. ¶ 9; see Rosa Decl. at Ex. A).  As per the Bureau of Prisons Program Statement 5270.09 ("P.S. 5270.09"), entitled "Inmate Discipline Program,"[3] and 28 C.F.R. § 541.7, the Unit Discipline Committee ("UDC") Case Manager, A. Day, reviewed the incident report, and noted that the UDC hearing was delayed from the date of the incident due to the continuing SIS investigation.  (DHO Decl. ¶ 10).  The UDC took a statement from Rosa, who stated, "No comment."  (Id.).  Rosa's charge constituted a Greatest Severity Level Offense, as a result of which the UDC was required to refer the incident report to the DHO for further review.  (Id. ¶ 10 (citing, inter alia, P.S. 5270.09 at 9-10)).  The UDC recommended at least a one year loss of visiting, telephone, and commissary privileges and disallowance of good conduct time at the maximum allowable amount if Rosa was found by the DHO to have committed the prohibited act.  (DHO Decl. ¶ 10).

Rosa was given notice of his hearing before the DHO, and signed a "Notice of Discipline Hearing Before the DHO" and "Inmate Rights Discipline Hearing" forms on

---

[3]  A copy of P.S. 5270.09 is attached to Rosa's motion for a preliminary injunction (Docket No. 7) as Exhibit A.

October 3, 2012, acknowledging his rights.  (Id. & Ex. B).  Specifically, but without

limitation, Rosa was advised of his right to have a full-time staff member represent him at

the hearing, and his conditional right to call witnesses.  (Id.).  Rosa declined staff

representation and chose not to call any witnesses on his behalf for the DHO hearing.

(Id.).

     Rosa's hearing was held by DHO Anthony Amico on October 18, 2012.  (Id. ¶

11).  According to DHO Amico, at the hearing Rosa was read his due process rights and

he informed the officer that he understood those rights.  (Id.).  At no point in time during

this hearing did Rosa raise any procedural issues, request witnesses or staff

representation, or present written documentation as evidence.  (Id.).  Rosa was informed

aloud of the incident report at which time Rosa opted to make a statement; according to

DHO Amico, Rosa stated, "I plead guilty to using the cell phone."  (Id.).  Rosa now

challenges that statement, asserting that he "pled guilty to having his picture taken, but

stated that he never owned nor possessed a cell phone."  (See Rosa Decl. ¶ 4).[4]  Rosa

offers no explanation for the fact that a phone was used to call a number found only on

his approved phone list.

     DHO Amico found Rosa guilty of Possession, Manufacture, or Introduction of a

Hazardous Tool (Cell Phone).  (DHO Decl. ¶ 11).  When making his decision, the DHO

---

    [4]  Assuming that there is a substantive difference between the two statements, they do not
need to be reconciled at this time.  The fact that a phone was used to call a number on Rosa's
approved phone list and that Rosa allowed his picture to be taken with a phone is sufficient to
sustain the charges that he "possessed" the phone.

took into account documentary evidence, including the reports generated by the SIS investigation and the reporting officer's written incident report, and Rosa's admission that he used the phone. (Id.). The DHO sanctioned Rosa by disallowing 41 days of good conduct time, forfeiting 90 days of non-vested good conduct time, applying 60 days of disciplinary segregation, a one year loss of visiting privileges, 6 months loss of telephone privileges, and 6 months loss of commissary privileges. (Id.). As detailed below, Rosa contends that these sanctions exceeded those available for this offense and were arbitrary and capricious.

### Subsequent Proceedings

On November 14, 2012, after learning of the DHO's decision and the accompanying sanctions, Rosa appealed the decision to his Regional Director in Regional Administrative Remedy Appeal No. 713391-R1. (Id. ¶ 12 & Ex. C). In his appeal, Rosa claims that "there were multiple inmates that possessed or utilized a cellular device . . . but the sanctions in my case, on the attach[ed] document, [are] more severe than those other inmates, when we had the same charges, in the same facility, and the same DHO." (Id. at Ex. C). He further claimed that he was discriminated against and his Eighth Amendment rights were violated by the cruel and unusual punishment given to him. (Id.) The Regional Director, J. L. Norwood, responded on December 20, 2012, concluding as follows:

> Program Statement 5270.09, Inmate Discipline, authorizes the DHO
> to impose sanctions he determines will have a significant impact
> upon an inmate's future behavior. Although inmates may have

> similar charges, an independent analysis is used to determine what sanctions, if any, will be imposed in a disciplinary action.
>
> The record in this case reflects substantial compliance with Program Statement 5270.09, <u>Inmate Discipline</u>.  The decision of the DHO was based upon the greater weight of the evidence, and the sanctions imposed were consistent with the severity level of the prohibited act. The sanctions imposed, 60 days of disciplinary segregation, disallow 41 days of good conduct time, forfeit 90 days of non-vested good conduct time, one year loss of visiting privileges, and six months loss of telephone and commissary privileges, were not disproportionate to your misconduct.  Accordingly, your appeal is denied.

(<u>Id.</u> at Ex. C).

Rosa then filed an appeal to the BOP's Office of General Counsel in Central Office Administrative Remedy Appeal No. 713391-A1 on January 7, 2013, in which he claimed that while he had admitted to having his picture taken, he "never possessed or used a cell phone in FPC Devens" and that he was denied access to the evidence that supported the DHO's decision because it was deemed confidential and could not be released.  (<u>Id.</u> at Ex. D).  In addition, he reiterated his previous claim that others who had committed the same offense had received lesser sanctions.  (<u>Id.</u>).  The appeal was accepted on January 14, 2013, but Rosa did not receive a response from the Central Office within the 40 days allotted for a response under 28 C.F.R. § 5402.18.  (DHO Aff. ¶ 14).

Rosa followed these appeals with his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, on March 4, 2013.  (Docket No. 1).  Therein, he claims that his due process rights were violated by the arbitrary and capricious sanctions imposed upon him

by the DHO in violation of Program Statement 5270.09 and 28 C.F.R. 541.4(b)(1)

(2013).  (Id.).  He also claims that the BOP acted in violation of the Second Chance Act,

18 U.S.C. § 3624 (2013), by not granting him the ability to carry out 10% of his sentence

in an RRC.  (Id.).

## Placement in a Residential Reentry Center

On or about March 13, 2013, Rosa filed a Request for Administrative Remedy

seeking to increase the number of days he was to spend in an RRC prior to his release.

(Docket No. 18).  Originally it was determined that a 91 to 120-day RRC placement

would be "sufficient time to provide [him] the greatest likelihood of successful

reintegration into the community."  (Id. at 5/1/13 Regional Director decision).  However,

after his conviction of the disciplinary charges stemming from the cell phone incident,

Rosa's situation was re-evaluated and it was determined that "a 30 to 45-day placement in

a correctional component of RRC was more appropriate."  (Id.).  Rosa appealed to the

Warden by filing a Request for Administrative Remedy.  The Warden denied the Request

in a decision dated March 25, 2013.  (Docket No. 18).  Therein he wrote:

> An investigation into your request revealed the following.  It is the
> goal of the Bureau of Prisons (BOP), to place inmates in RRC's for
> the amount of time necessary to provide the greatest likelihood of
> successful re-entry into the community.  Unit staff are making
> inmates' pre-release RRC placement decisions on an individual basis
> based on the criteria found in 18 U.S.C. § 3612(b), which includes,
> but is not limited to, the following: the inmate's need for re-entry
> services, the resources and ability of the RRC to meet the offender's
> needs, the nature and circumstances of the inmate's offense, the
> inmate's history, any statement by the sentencing court regarding a
> period of community confinement, any potential risks to public

> safety, and the need for the BOP to manage the inmate population in
> a responsible manner.

(Id.).  According to the Warden, considering all relevant factors, including the fact that

Rosa had been found guilty by the DHO for possessing a cell phone, and the fact that he

reported that he could reside with his fiancee upon release, the Community Corrections

Manager ("CCM") determined that the more limited placement in an RRC was approp-

riate.  (Id.).  The Warden wrote further that "CCM's make placement decisions based on

each inmate's individual needs, along with the agency's duty to use its limited resources

judiciously and to provide re-entry services to as many inmates as possible."  (Id.).

Rosa appealed the Warden's decision to the Regional Director.  In rejecting the

appeal in a decision dated May 1, 2013, the Regional Director wrote:

> You were accepted and approved for RRC placement with a date of
> September 17, 2013.  It is proper for staff to assess sustained inmate
> misconduct in reaching classification decisions, including RRC
> placement.  Accordingly, your appeal is denied.

(Docket 18).  Rosa was further notified of his right to appeal to the General Counsel,

Federal Bureau of Prisons.  (Id.).  It is unclear whether Rosa did appeal further.[5]

## Further Court Proceedings

---

[5] Generally, a prisoner must exhaust his administrative remedies before filing a habeas
petition.  There are rare circumstances where exhaustion is excused, such as where any attempt to
exhaust would be patently futile.  See Iacaboni v. United States, 251 F. Supp. 2d 1015, ___ n.1
(D. Mass. 2003) (citing Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994)).  Rosa has asserted his
belief that exhaustion would be futile, and the Respondent has not addressed this claim.  There-
fore, this court will assume that exhaustion is not an issue and will address Rosa's claim on the
merits.

As detailed above, on March 28, 2013, Rosa moved for a preliminary injunction. (Docket No. 7).  He argues that according to Program Statement 5270.09 and 28 C.F.R. 541.5(a), he was supposed to receive an incident report within 24 hours of the staff becoming aware of his involvement in the incident and he did not receive the report in a timely fashion.  (Id.).  He further contends that the DHO exceeded his discretionary authority by taking away 90 days of his non-vested good conduct time credits, which ultimately affects his release date.  (Id.).  The Respondent filed a motion for summary judgment, addressing Rosa's objections to the sanctions imposed.  He has not addressed Rosa's contention that he was denied sufficient time in an RRC.

Additional facts will be discussed below where appropriate.

## III.  DISCUSSION

### A.    Standard of Review

Preliminary Injunction

Rosa has moved for a preliminary injunction seeking to restore his 90 days of good conduct time.  To prevail on his claim for a preliminary injunction, Rosa "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that the injunction is in the public interest."  Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (additional citations omitted)).  While all of these factors must be weighed, the most critical factor is the

moving party's likelihood of success on the merits.  People's Fed. Sav. Bank, 672 F.3d at

9.  For the reasons detailed below, Rosa is not likely to prevail on the merits of his claim.

Therefore, his motion for a preliminary injunction will be denied.

Summary Judgment

The Respondent has moved for summary judgment on the issues raised in Ground

One of Rosa's habeas petition, namely those relating to the sanctions imposed as a result

of the cell phone incident.  Summary judgment is appropriate when the moving party

shows, based on the discovery and disclosure materials on file, and any affidavits, that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' if it 'may reasonably

be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir.

2008) (quoting Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is

material only if it possesses the capacity to sway the outcome of the litigation under the

applicable law."  Vineberg, 548 F.3d at 56 (quotations, punctuation, and citations

omitted).

The moving party bears the initial burden of establishing that there is no genuine

issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st

Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only

by providing properly supported evidence of disputed material facts that would require a

trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511

U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).  The court must view the record in

the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summery judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  Leblanc, 6 F.3d 836 at 841 (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

"Notwithstanding the liberality of this standard, the nonmovant cannot simply rest on perfervid rhetoric and unsworn allegations."  Morris v. Gov't Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994).  "To defeat a motion for summary judgment, the nonmoving party is required to produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trial worthy issue . . . . [C]onclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact.'"  Furtado v. Std. Parking Corp., 820 F. Supp. 2d 261, 269 (D. Mass. 2011) (citing Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1985) (internal citations and quotations omitted).

## B.   Timeliness of Notice

Rosa contends that his due process rights were violated when the DHO failed to give him written notice of charges within 24 hours of the September 7, 2012 interview he

underwent in connection with the cellular phone incident.  Although Rosa is correct that his due process rights are implicated in connection with a disciplinary proceeding, the undisputed facts establish that the timing of the notice did not violate his constitutional rights.

Supreme Court precedent has established that prisoners may "claim the protections of the Due Process Clause.  They may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935, 952 (1974), and cases cited.  Therefore, "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent, MCI-Walpole v. Hill, 472 U.S. 445, 453, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356 (1985).  To satisfy this due process right, an "inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Id. at 454, 105 S. Ct. at 2773 (citing Wolff, 418 U.S. at 563-67, 94 S. Ct. at 2978-80).  Rosa does not assert that he did not receive these procedural protections, and the undisputed facts establish that the BOP satisfied these procedural due process requirements.  Consequently, Rosa has failed to establish a violation of his constitutional rights.

Rosa's claim of untimely notice is based on the BOP regulation that provides as follows:

-14-

> The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

28 C.F.R. § 541.5(a) (2013). Thus, Rosa contends, he should have been provided with written notice of the incident within 24 hours of his interview on September 7, 2012. However, such a notice was neither factually nor legally required.

As an initial matter, Rosa has not put forth any evidence challenging the BOP's contention that its investigation was not concluded until October 2, 2012, at which time staff was prepared to charge Rosa with having been involved in the incident. Therefore, the notice he received on that date was timely. Moreover, even assuming that he should have been charged on September 7, 2012, the law is clear that the delay did not violate Rosa's constitutional rights.

A critical purpose of the notice requirement "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Wolff, 418 U.S. at 564, 94 S. Ct. at 2978. Early notice while an investigation is ongoing does not satisfy that purpose, since further investigation "may reshape the nature of the charges or the evidence relied upon." Id. at 564, 94 S. Ct. at 2979. Moreover, "staff must witness or *reasonably believe* prohibited conduct occurred before charging an inmate. 28 C.F.R. 541.5(a). Staff cannot be expected to provide notice of charges prior to establishing the nature and extent of the conduct, particularly when the charges may be based on cumula-

-15-

tive conduct over a period of time." Branch v. Thomas, No. 3:11-cv-01319-SI, 2012 WL

5830396, at *4 (D. Ore. Nov. 15, 2012) (emphasis in original).  Therefore, while the

Supreme Court has held that procedural due process requires that an inmate be given at

least 24 hours to prepare for his or her hearing on a disciplinary charge, see Wolff, 418

U.S. at 564, 94 S. Ct. at 2979, there is no constitutional requirement that a prisoner be

given notice within 24 hours of the staff believing that a prisoner may be charged in the

future with a disciplinary infraction.  See Nerlich v. Quintana, Civ. No. 12-CV-325-JMH,

2013 WL 875909, at *5 (E.D. Ky Mar. 7, 2013) (even assuming, arguendo, that the BOP

regulation "required delivery of an incident report within 24 hours in all instances, the

Constitution does not, and thus a failure to adhere to the regulation does not create a

claim of constitutional dimension."); Wallace v. Fed. Det. Ctr., No. 13-1013, 2013 WL

2420886, at *2 (3rd Cir. June 5, 2013) (no constitutional right to issuance of a charge

within 24 hours of an incident, "*Wolff* only requires that an inmate receive written notice

of the charges 24 hours before a hearing[.]").

Moreover, even the language of the BOP regulation does not support Rosa's

contention that he was entitled to have received a written notice on September 7, 2012.

28 C.F.R. § 541.5(a) provides that an inmate "will *ordinarily* receive the incident report

within 24 hours of staff becoming aware of your involvement in the incident."  (Emphasis

added).  As courts have recognized, "[t]his language is not mandatory, and therefore

cannot create an enforceable right." Nerlich v. Quintana, 2013 WL 875909 at *5.

Rather, "[i]nclusion of 'ordinarily' as a modifier for 'provided within 24 hours' provides

a flexibility that is essential in the prison context, where investigation of suspicious activity may be required to define the scope of the activity and to identify all participants."  <u>Branch v. Thomas</u>, 2012 WL 5830396 at *4.  It is undisputed that Rosa was provided with advanced written notice of the charge on October 2, 2012, he had more than 24 hours to prepare for his hearing, he was given the opportunity to call witnesses to speak in his defense during his October 18, 2012 hearing, and he was furnished with a written statement setting forth the specific evidence relied upon to support the fact finder's ultimate finding.  (<u>See</u> DHO Decl. ¶¶ 5 & 8).  Therefore, his claim that his due process rights were violated must fail.

### C.    <u>Loss of Good Conduct Time</u>

Rosa contends that his loss of good conduct time credits exceeded the amounts allowed by the applicable regulations.  The DHO sanctioned Rosa to both 41 days disallowance of good conduct time, and 90 days forfeiture of non-vested good conduct time.  Rosa contends that the DHO was permitted "to take 41 days ONLY OR disallow up to 100% of the non-vested good conduct time" in accordance with P.S. 5270.09.  (<u>See</u> Mot. Prelim. Inj. (Docket No. 7) at ¶ 11).  Moreover, he contends that 100% of the non-vested good conduct time cannot exceed the maximum amount that an inmate earns in one year, which is 54 days.  (<u>Id.</u> at ¶¶ 12-13).  These arguments are not supported by the applicable regulations.

Pursuant to 28 C.F.R. § 541.8(g), for the Greatest Severity Level Offenses the DHO has the authority to "impose *any* of  the available sanctions in Tables 1 and 2."  28

C.F.R. § 541.8(g) (emphasis added).[6]  Table 1, which is found at the end of P.S. 5270.09,

provides for both the loss of earned and unearned good conduct time.  As Table 1

provides:

> B.      Forfeit and/or withhold earned statutory good time or non-vested
>         good conduct time (up to 100%) and/or terminate or disallow extra
>         good time ....
>
> B.1.    Disallow ordinarily between 50% and 75% (27-41 days) of good conduct
>         time credit available for year ....

P.S. 5270.09 further explains that Sanction B.1 will be mandatory for certain inmates

who meet certain criteria (such as Rosa) and who commit Greatest Severity Level

Offenses.[7]  In addition, P.S. 5270.09 makes it clear that the "DHO may impose any

available sanctions (A through M) *in addition to* sanctions A through E."  (P.S. 5270.09

at 9-10 (emphasis added)).  In the instant case, the DHO imposed sanctions B, B.1, C

(disciplinary segregation) and F (loss of privileges (*e.g.*, visiting, telephone, commissary,

---

[6]  Table 2 provides "additional available sanctions for repeated prohibited acts within the same severity level."  The BOP did not sanction Rosa under Table 2 but, rather, imposed multiple sanctions under Table 1.  Therefore, Rosa's objection to the Respondent's use of Table 2 sanctions is not supported by the record and will not be discussed further.  (See Rosa Resp. (Docket No. 22) at ¶ 7).

[7]  This is consistent with 28 C.F.R. § 541.4, which makes it mandatory for certain inmates (such as Rosa) who are convicted of Greatest Severity Level Offenses to "lose at least 41 days, or 75% of available credit if less than 54 days are available for the prorated period, for each act committed."  28 C.F.R. § 541.4(b)(2).  As quoted above from Table 1, § B.1, the BOP has determined that the "prorated period" is a year.  Rosa does not deny that he was entitled to 54 days of good conduct time in the year the sanction was imposed.  Therefore, 41 days (75% of 54 = 41) was appropriate.  Rosa has put forth an argument concerning how to prorate the period if there are multiple infractions in any given year.  (See Rosa Resp. (Docket No. 22) at ¶ 9).  Since factually this does not appear to be his situation, his calculations will not be addressed further.

movies, recreation)) from Table 1.  (DHO Decl. ¶ 14).  This imposition of multiple

sanctions from Table 1 is authorized by BOP regulations.  See, e.g., Wallace v. Ebbert,

No. 12-3097, 505 Fed. Appx. 124, 125, 2012 WL 5861760 (3d Cir. Nov. 20, 2012)

(unpub. op.) (it was permissible for DHO to forfeit both non-vested good conduct time up

to 100% as well disallowing earned good conduct time).

　　　　Nor is there merit to Rosa's contention that the forfeiture of unearned good time

credit is limited to 54 days.  Rather, the quoted language of sanction "B" is clear that

there is no such limitation on non-vested good conduct time — it can be up to 100% of

the potentially available credit given the sentence imposed.  Courts have so construed the

regulation.  See id. (in addition to allowing loss of good time credit, court affirms DHO's

penalty of forfeiture of 458 days of non-vested good time credit).  The limit on the

number of days available for good time credit each year is only relevant to the mandatory

forfeiture found in 28 C.F.R. § 541.4.  See note 7, supra.  The sanctions imposed on Rosa

were permissible and were not arbitrary and capricious.

### D.　　Unequal Treatment

　　　　Rosa has asserted that his penalty was more severe than others involved in the

same offense.  However, the penalty imposed on him was within permissible parameters,

and, as stated in P.S. 5270.09, it was appropriate for "[s]taff [to] take disciplinary action

at such times and to the degree necessary to regulate an inmate's behavior within Bureau

rules and institution guidelines[.]"  (P.S. 5270.09 at 3).  As detailed above, the Regional

Director expressly addressed Rosa's claim of unequal treatment, and concluded that it

lacked merit.  There is no basis for this court to reach a different conclusion.

Rosa contends that he has been denied equal treatment under the law.  However,

he has failed to establish a constitutional violation.

> Equal protection means that similarly situated persons are to receive
> substantially similar treatment from their government.  To establish
> an equal protection violation, a plaintiff must introduce sufficient
> evidence from which a jury could reasonably conclude that,
> compared with others similarly situated, the plaintiff was treated
> differently because of an improper consideration, such as his
> religion.  Equal protection does not, however, require prison staff to
> treat all inmate groups the same when differentiation is necessary to
> avoid a threat to prison security.

Kuperman v. Wrenn, 645 F.3d 69, 77-78 (1st Cir. 2011) (internal quotations and citations

omitted).

In the instant case, Rosa has not identified any "improper consideration" which

may have been a factor in his allegedly unequal treatment.  Moreover, the First Circuit

has recognized that there exists a "broad exercise of discretion by prison authorities to

take reasonable and necessary action, including punishment, to enforce the prison

disciplinary regime . . . ."  Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st

Cir. 1995).  Under such circumstances, "disciplinary matters are private and addressed on

a case-by-case basis[,]" as a result of which "circumstances surrounding one inmate's

discipline cannot be compared to the discipline imposed on another inmate since each

case stands on its own merits."  Gonzalez v. Rushing, No. 4:12CV0212, 2012 WL

1970054, at *6 (N.D. Ohio May 30 2012) (unpub. op.) (rejecting equal protection

challenge to argument that one inmate's sanction was more severe than another's for the same offense).  In the instant case, Rosa's punishment fell within acceptable parameters and prison officials considered his personal circumstances in determining the appropriate sanction.  In light of "the need to accord prison officials considerable latitude in matters of internal discipline," this court "cannot say that the sanctions imposed, in light of the seriousness of the violations, were so extreme as to be unreasonable by the constitutional standard."  Collazo-Leon, 51 F.3d at 318-19.  Nor do the individualized sanctions constitute a violation of Rosa's equal protection rights.

### D.    Residential Reentry Center Placement

In his habeas petition, Rosa claims that the BOP acted in violation of the Second Chance Act, 18 U.S.C. § 3624, by not granting him the ability to carry out 10% of his sentence in an RRC.  Specifically, 18 U.S.C. § 3624 provides in relevant part:

> (c)    Prerelease custody.--
>
> (1) In general.-- The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).  According to BOP regulations:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration in the community within the time-frames set forth in this part.

28 C.F.R. § 570.22.  In turn, 18 U.S.C. § 3621(b) requires that the BOP consider the

following factors in designating the place of a prisoner's imprisonment: "(1) the resources

of the facility contemplated; (2) the nature and circumstances of the offense; (3) the

history and characteristics of the prisoner; (4) any statement by the court that imposed the

sentence . . . ; and (5) any pertinent policy statement issued by the Sentencing Commis-

sion[.]"  The record is clear that the BOP considered these relevant factors.  (See Docket

No. 18 at Response to Request) (in determining the length of Rosa's placement in RRC,

the BOP considered "the inmate's need for re-entry services, the resources and ability of

the RRC to meet the offender's needs, the nature and circumstance of the inmate's

offense, the inmate's history, any statements . . . any potential risks . . . and the need for

the BOP to manage the inmate population in a responsible manner.").

    Rosa objects to the fact that his time in the RRC was reduced due to his

disciplinary conviction.[8]  However, he has not raised a cognizable constitutional claim.

"There is no constitutional or inherent right of a convicted person to be conditionally

released before the expiration of a valid sentence."  Greenholtz v. Inmates of Neb. Penal

& Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104, 60 L. Ed. 2d 668 (1979).  Thus,

Rosa's "placement in a halfway house alone does not give rise to a protected liberty

---

    [8]  It is unclear on what Rosa bases his claim of entitlement to spend 10% of his sentence in
an RRC.  18 U.S.C. § 3624(c)(2) does provide that "this subsection may be used to place a
prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that
prisoner or 6 months."  However, there is no evidence that home confinement was an option in
Rosa's case.  In any event, the percentage is not critical to this court's analysis and this court will
simply address Rosa's challenge as being generally to the reduction in the amount of time spent in
the RRC.

interest" and his objection to his placement does not state a due process violation.

Rodriguez v. Wiley, No. 08-cv-008830WYD, 2009 WL 2868838, at *2 (D. Colo. Sept. 3, 2009).  In addition, "[t]he Second Chance Act does not guarantee a one-year RRC placement, but 'only directs the Bureau of Prisons to consider placing an inmate in a RRC for up to the final twelve months of his or her sentence."  Lawbaugh v. Zickefoose, No. 10-3649 (RMB), 2011 WL 677328, at *5 (D.N.J. Feb. 16, 2011) (citations omitted). Consequently, the fact "[t]hat [Rosa] disagrees with the Bureau of Prison's recommenda-tion as to [his] placement in a residential reentry center does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Rosa] or any other prisoner to any guaranteed placement in a residential reentry center.  'The duration of [residential reentry center] placement is a matter as to which the [Bureau of Prisons] retains discretionary authority.'"  Creager v. Chapman, No. 4:09-CV-713-A, 2010 WL 1062610, at *3 (N. D. Tex. Mar. 22, 2010) (alterations in original).

For these reasons, Rosa's challenge in his habeas petition to the reduction in amount of time to which he was assigned to the RRC must fail.

## IV.  CONCLUSION

For the reasons detailed herein, Rosa's motions for a preliminary injunction (Docket No. 7) and for appointment of counsel (Docket No. 14) are DENIED, the Respondent's motion for summary judgment (Docket No. 19) is ALLOWED, and Rosa's habeas petition (Docket No. 1) is DISMISSED.

　　/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge